IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ERNEST C. TREVINO, | § | |
| *Plaintiff*, | § § § | 5-18-CV-00688-DAE-RBF |
| vs. | § § | |
| CITY OF PLEASANTON, JOHNNY HUIZAR, INDIVIDUALLY, CITY MANAGER FOR THE CITY OF PLEASANTON; | § § § § § | |
| *Defendants*. | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Senior United States District Judge David A. Ezra:**

This Report and Recommendation concerns the Amended Complaint filed by Plaintiff Ernest C. Trevino, Dkt. No. 20, and the Motion to Dismiss filed by Defendants City of Pleasanton and City Manager Johnny Huizar, Dkt. No. 25. Because Trevino is *proceeding in forma pauperis* ("IFP"), this case was automatically referred to the undersigned upon filing, pursuant to 28 U.S.C. § 636(b) and the docket-management order entered on September 29, 2017 in the San Antonio Division of the Western District of Texas. The undersigned has authority to enter this Report and Recommendation regarding the disposition of Trevino's case pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72.

Despite ample opportunity to amend his Complaint, Trevino has failed to state a non-frivolous claim on which relief may be granted. Accordingly, it is recommended that Defendants' Motion to Dismiss, Dkt. No. 25, be **GRANTED** and that this case be **DISMISSED WITH PREJUDICE**.

**I.      Factual and Procedural Background**

Plaintiff Trevino initiated this action on July 5, 2018. He did so seeking to proceed IFP. In his Proposed Original Complaint, Trevino alleged that he is a private citizen who made numerous unspecified complaints against the City of Pleasanton. According to Trevino, the City and City Manager Defendant Johnny Huizar subverted Trevino's attempts at free speech in a "malicious discriminatory and retaliatory manner" by failing to follow the City Charter's mandate on how the City ought to respond to complaints. Trevino believes the alleged failure to properly respond to his complaints is due to his Mexican American descent and was in retaliation for his exercise of his right to free speech. Trevino brings §1983 claims for violations of the Equal Protection Clause of the Fourteenth Amendment, the First Amendment, the Fourth Amendment, and for intentional infliction of emotional distress (the latter presumably in violation of state law). Trevino also brings claims under 42 U.S.C. § 1981 for discrimination. *See* Dkt. No. 1.

Originally, it was recommended that IFP status be denied, *see* Dkt. No. 3, but this determination was reconsidered and changed after Trevino supplied additional information indicating changed financial circumstances sufficient to warrant IFP status, *see* Dkt. No. 12 at 2. When granted IFP status, Trevino was ordered to file a more definite statement of his claims. *See id.* at 4-5.

The Order requiring a more definition statement explained why such a statement is needed here. The Order explained that, without any alleged supporting facts, Trevino's mere subjective belief that he suffered unlawful discrimination due to his Mexican-American heritage is insufficient to state a claim. *See id.* With respect to Trevino's First Amendment retaliation claim, the Order instructed Trevino to explain or allege facts that would explain the subject

matter of his underlying complaints, the constitutional rights Defendants allegedly violated, how Defendants' actions could have caused Trevino to suffer an injury that might chill the speech of a person of ordinary firmness, and the alleged factual basis for Trevino's assertion that Defendants' actions in allegedly ignoring his complaints were motivated by Trevino's speech. *See id.*

The Order also noted unexplained inconsistencies within Trevino's allegations in his Proposed Complaint. *See id.* For example, the Proposed Complaint alleged that Defendants repeatedly ignored Trevino's complaints because of his race. *See id.* Yet the Proposed Complaint also claimed Defendants were motivated by another reason—Trevino's First Amendment protected activity. *See id.* Further clarification of these matters was therefore ordered.

Finally, the Order directed Trevino to explain whether consolidation of this case with a related removed case would be appropriate. *See id.* 6-8. In response, on November 13, 2018, Trevino voluntarily dismissed the related removed case and thereby mooting the consolidation issue. *See Trevino v. City of Pleasanton*, No. 54-18-cv-1006-DAE (removed Sept 25, 2018), Dkt. Nos. 9-10. Trevino also amended his Original Complaint at least twice, attaching various exhibits in an effort to support his claims. *See* Dkt. Nos. 16, 17, 20, 21.

As a result of repeated amendments, the live Complaint is difficult to follow. Dkt. Nos. 20 & 21. It alleges that beginning on or about March 9, 2017, Trevino submitted 17 complaints to Defendant City Manager Huizar. Those complaints, which the Complaint categorizes as "free speech," concerned Trevino's belief that City employees damaged property located at 2221 W. Goodwin, Pleasanton, Texas that Trevino was renting from a private company. According to Trevino, and contrary to the City's rules, Huizar wholly ignored Trevino's complaints by maintaining that they were not submitted in the proper form. Huizar then allegedly "attempted to

subvert the complaint[s] by sending [Trevino] an additional request of requirements in order to take the complaint which were unrealistic without information received from an open records request[,]" which the City allegedly refused to produce without a valid legal basis. The Complaint further alleges that Defendants conspired against Trevino in conjunction with a property management group and a landowner, all in an effort to deny Trevino's open-records requests and evict him from the rental property.

The live Complaint attempts to advance various contradictory reasons to explain the motive for Defendants' actions that Trevino categorizes as discrimination against him and "*every citizen of Pleasanton.*" *Id.* ¶ 27 (emphasis added). First, Trevino places himself in a class of one, complaining that he was treated differently from *every other* Pleasanton citizen based "solely on past practices and Trevino['s] previous dealings with the city." *Id.* ¶¶ 27, 60. Next, Trevino alleges that Huizar adopted and rewrote various unspecified policies to subvert Trevino from filing his complaint—this time because Trevino is of Mexican-American descent. *Id.* ¶¶ 27, 49. In support, Trevino alleges that "the City of Pleasanton has handled numerous complaints from white business persons who could help their standings and elected rights." *Id.* ¶¶ 28, 80. Trevino further alleges that "[s]ince Huizar's appointment as City Manager he has moved into a mindset and position to take care of white descendant citizen's [sic] before Mexican American citizens." *Id.* ¶ 29. Huizar, Trevino alleges, "has developed a practice and pattern by using his position for lunches, dinners, parties and all means to protect his City Manager position by treating them better than the Mexican American citizens including Plaintiff." *Id.* Trevino claims that his allegations of racial discrimination will be "prove[n] by [Huizar's] phone records and credit card expenses and persons he protects and takes care of who are of white descent to include allowing white citizens meetings, conferences and mediations to resolve issues but once again not

allowing Plaintiff this right." *Id.* At other points in his Complaint, however, Trevino alleges that Huizar's allegedly wrongful actions in rewriting City policies have prevented "*all citizens of Pleasanton*" from exercising their "rights to complain or rights to deal with their city government." *Id.* ¶¶ 40, 49.

Third, Trevino alleges that Defendants retaliated against him for engaging in protected free speech. According to Trevino, he "question[ed] [the] City of Pleasanton['s] adopted policies, rules and regulations regarding the scope of their legal authority to not allow him an avenue to file a complaint, open records, or any citizen right." *Id.* ¶¶ 63, 65, 70.

Finally, Trevino alleges that at some unknown point, the "City of Pleasanton has abused the lobby system in Texas and illegally obtained TxDot grants with the connection between the City Attorney Bobby Maldonado and his close connection to Carlos Uresti." *Id.* ¶ 14. This "close connection," Trevino alleges, "allowed the City of Pleasanton and City Manager Huizar the opportunity to illegally obtain state funds for illegal use within the City of Pleasanton general fund." *Id.* And, according to Trevino, Defendants have "lied under oath in an affidavit [filed in state court] provided by City Manager Huizar to in fact have current airport grants for maintenance since 1996 to present 2018 and a second grant for pavement for 2018." *Id.* ¶ 15. Nowhere in his live Complaint does Trevino explain how the City's alleged misuse of state funds harmed him or how this factual allegation is connected to the events that form the basis of the present action.

All of the aforementioned acts, Trevino alleges, together give rise to the following claims against Huizar and the City of Pleasanton: (1) racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to Sections 1983 and 1981; (2) retaliation in violation of the First Amendment; (3) violations of various provisions of the Texas

5

Bill of Rights including the right of assembly, the right to petition for redress and grievances, and the right to free speech; (4) violations of Trevino's "Fourteenth Amendment rights to be free from malicious actions without due process"; (5) "deliberately indifferent policies, failure to train" in violation of Sections 1981 and 1983; (5) unspecified violations of the Fourth Amendment; and (6) intentional infliction of emotional distress. Although not specifically pled as causes of action, a liberal reading of Trevino's live Complaint appears to reveal that Trevino also raises a negligence claim for property damage caused by the aforementioned water damage, which allegedly fall within the waiver of governmental immunity set forth in the Texas Tort Claims Act Tex. Civ. Prac. & Rem. Code § 101.001 *et seq.*, as well as a claim for violations of the Texas Public Information Act, Tex. Gov't Code § 552.321. Trevino seeks past lost wages and loss of earning capacity "for farming and ranching on said properties," as well as damages for both physical and mental pain and suffering.

Defendants moved to dismiss Trevino's live Complaint on January 21, 2019, Dkt. No. 25. Trevino has filed multiple responses and sur-replies in opposition to Defendants' Motion—all of which the undersigned has considered. *See* Dkt. Nos. 27, 28, 29, & 31.

**II. Legal Standards**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The

allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quotations omitted). In addition, pro se pleadings are viewed under a less stringent standard than would ordinarily apply to pleadings drafted by an attorney. *Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983). As a result, Trevino's live Complaint is entitled to a liberal construction that draws all reasonable inferences in his favor. *See id.* Notwithstanding Trevino's pro se status, the Court need not credit conclusory allegations, legal conclusions couched as factual allegations, or "unwarranted deductions of fact." *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678); *Twombly*, 550 U.S. at 555, *Washington v. Weaver*, No. 08-30392, 2008 WL 4948612, at *1 (5th Cir. Nov. 20, 2008).

The scope of a court's review of a Rule 12(b)(6) motion to dismiss is "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). A court may also take judicial notice of matters of public record. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007). Accordingly, in evaluating Defendants' motion, the undersigned has considered the various exhibits attached to Trevino's live Complaint. *See* Dkt. No. 20 at 37-57; Dkt. No. 21. The undersigned has also taken judicial notice of the various state-court filings attached to Defendants' motion to dismiss. *See* Dkt. No. 26. These are matters of public record, and there is no dispute as to their authenticity.

*Section 1915(e) Frivolous Analysis*. The Court also has obligations when a plaintiff such as Trevino is proceeding IFP. In these types of cases courts *must* dismiss the plaintiff's case, at any time, if the court determines the claims presented are (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant enjoying immunity from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). An action is frivolous where there is no arguable legal or factual basis for the claims. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist" or if subject matter jurisdiction is lacking *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quotation marks omitted); *Bibbs v. Harris*, 578 F. App'x 448 (5th Cir. 2014); *Nixon v. Attorney Gen. of Tex.*, 537 F. App'x 512 (5th Cir. 2013)). A complaint can be factually frivolous if "the facts alleged are 'fantastic or delusional scenarios.'" *Eason v. Thaler*, 14 F.3d 8, 9 n.5 (5th Cir. 1994) (quoting *Neitzke*, 490 U.S. at 327-28).

In evaluating whether a complaint states a claim under § 1915(e)(2)(B), this Court applies the same standards governing dismissals pursuant to Rule 12(b)(6). *See DeMoss v. Crain*, 636 F.3d 145, 152 (5th Cir. 2011). Accordingly, in screening Trevino's live Complaint pursuant to §1915(e), the undersigned is not constrained by the arguments made by Defendants in their Motion to Dismiss.

**III. Analysis**

For the reasons discussed below, even the required liberal construction of Trevino's live Complaint reveals that it fails to state a non-frivolous claim on which relief may be granted. Several reasons support this conclusion.

First, as discussed above, Trevino alleges that both racial animus and First Amendment retaliation motivated Defendants' allegedly wrongful actions. But in various parts of his

Complaint, Trevino also claims he was treated differently than *any other* City of Pleasanton citizen based on his prior dealings with the City. And, in his response to Defendants' motion to dismiss, Trevino posits for the first time that Defendants' allegedly wrongful actions were intended "to push [Trevino] out so [the City] would make way for State and Federal grant money for the Pleasanton Airport Expansion." Dkt. No. 28 at 5. While pleading in the alternative may be appropriate in certain circumstances, the type of incoherent and internally inconsistent factual allegations presented here are of an entirely different character and are insufficient to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678.[1]

Second, Trevino has failed to plead any supporting facts to underpin his allegation that Defendants wrongfully influenced Trevino's eviction. It is this eviction that is the ultimate harm about which Trevino apparently complains. According to the Residential Lease entered into between Trevino and private company Energy Land, which Trevino attached to his Complaint,[2] Trevino's lease expired by its own terms on July 31, 2017. And according to emails attached to Trevino's live Complaint,[3] Energy Land simply exercised its right not to renew Trevino's lease at the end of the expired term. *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (explaining that where an exhibit attached to the complaint

---

[1] *See also Mora v. Univ. of Texas Sw. Med. Ctr.*, 469 F. App'x 295, 299 (5th Cir. 2012) (plaintiff's allegation that she was retaliated against after complaining about the defendant's unwillingness to accommodate her disability was "contradicted by the other facts alleged in the complaint, making the claim implausible on its face"); *Atkins v. City of Chicago*, 631 F.3d 823, 831-32 (7th Cir. 2011) (noting that a court need not accept the factual allegations made in the complaint as true where the allegations are contradicted in the complaint itself); *Saravia v. Select Portfolio Servicing, Inc.*, No. 1:13-CV-01921-RDB, 2014 WL 2865798, at *7 (D. Md. Jun. 23, 2014) (granting motion to dismiss pro se plaintiff's complaint and noting that "'[w]ith contradictory factual allegations, the Court cannot find a claim with "facial plausibility' under the standards as set forth in *Iqbal*").

[2] *See* Dkt. No. 21-1 at 1-16.

[3] *See* Dkt. No. 21-2 at 2.

contradicts an allegation in the complaint, then the exhibit controls). While Trevino speculates in his Response to Defendants' Motion to Dismiss that "[t]he City of Pleasanton and Huizar worked with and in conjunction with [Energy Land] rental/real estate company Brohill by phone calls and emails in a conspiracy to push Plaintiff from the property at whatever cost so they could be granted the funds to expand their [Pleasanton Airport Expansion Project],[4] Trevino sets forth no well-pleaded facts in his live Complaint to support this conclusory allegation. And, even assuming Trevino had done so here, the facts as alleged appear incapable of supporting any claimed constitutional violation where a city takes property with an *owner's* permission—even if that might result in the nonrenewal of a tenant's private lease with a third party concerning that property.

Nor do Trevino's claims that Defendants ignored and then mishandled his property-damage complaints in alleged violation of city policy give rise to a viable due process claim. Trevino has failed to plead any constitutionally protected property or liberty interest in how city complaints are handled.[5] And, as courts recognize, "the failure to follow a relevant policy does not, standing alone, establish a violation of a constitutional right." *Graham v. City of Cleveland, Mississippi*, No. 4:18-CV-4-DMB-JMV, 2019 WL 1386400, at *3 (N.D. Miss. Mar. 27, 2019).

Trevino's complaints with respect to Defendants' alleged misrepresentations in connection with the procurement of TXDOT grants similarly fail to state a claim on which relief may be granted. Trevino has failed to allege—nor is this Court aware of—any federal or state

---

[4] *See* Dkt. No. 28 at 5-6.

[5] *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."); *see also Bundick v. Bay City Indep. Sch. Dist.*, 140 F. Supp. 2d 735, 739 (S.D. Tex. 2001) ("It is fundamental law that the strictures of due process never arise unless the plaintiff can demonstrate the deprivation of a cognizable liberty or property interest.").

cause of action on which Trevino could base such a claim. In his Response to Defendants' Motion to Dismiss, Trevino alleges that Huizar has falsified various state documents in alleged violation of the "Texas Penal Code and Federal Crimes" and that Trevino has provided this documentation to "City of Pleasanton Officials and the Atascosa DA Office with no action to date." Dkt. No. 27 at 7. But the "failure to investigate is not a violation of a federal statutory or constitutional right." *Woodland v. City of Vicksburg*, No. CIVA 505CV85DCBJCS, 2006 WL 3375256, at *3 (S.D. Miss. Nov. 21, 2006). "[T]o the extent that [Trevino] is alleging that a *criminal* investigation should be instituted, such investigations are solely within the purview of law enforcement authorities." *Hymel v. Champagne*, No. 07-450, 2007 WL 1030207, *2 (E.D. La. 2007) (emphasis in original). To be clear, these allegations are fanciful and unsupported; it is not enough to simply allege a vast conspiracy without also including some non-fanciful factual support.

Because Trevino has failed to state a non-frivolous federal cause of action on which relief may be granted, and because there is no valid independent basis for federal jurisdiction, the District Court should decline to exercise supplemental jurisdiction over Trevino's state law claims. *See, e.g., Brookshire Bros. Holding v. Dayco Prod., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) ("Section 1367 authorizes a court to decline supplemental jurisdiction over a state law claim if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Huckeba v. Greenville Police Dep't*, No. 3:05-CV-0437-G, 2005 WL 1502063, at *1 (N.D. Tex. Jun. 24, 2005), *report and recommendation adopted as modified*, 2005 WL 1837028 (N.D. Tex. Jul. 29, 2005) ("[S]ince the Texas Open Records Act neither implicates provisions of the United States Constitution nor federal statutes, this court is without jurisdiction over any claim brought pursuant to Tex. Gov't Code § 552.001-.353.").

## IV. Conclusion and Recommendation

For the reasons discussed above, it is recommended that Defendants' Motion to Dismiss, Dkt. No. 25, be **GRANTED** and that Trevino's case be **DISMISSED WITH PREJUDICE** for failure to state a non-frivolous claim on which relief may be granted.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party,

except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 23rd day of April, 2019.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE